[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, John DeNino, entered into a lease as tenant with the defendant as landlord, at 129 Williams Street, Wallingford, Connecticut, for one year beginning September 1, 1987. The monthly rent was $375.00. The plaintiff in this action makes numerous claims for damages and attorneys' fees against the defendant in count 1, as follows:
 (1) that the defendant failed to obtain an occupancy permit as required by the Town of Wallingford;
 (2) that the defendant illegally entered the premises in violation of Conn. Stat.
 (3) that the defendant changed the locks on the premises thereby denying the plaintiff possession and access in violation of the landlord-tenant act;
 (4) that the defendant failed to provide the plaintiff with an accounting of his security deposit as required under Conn. Gen. Stat.
 (5) that the defendant failed to return the plaintiff's security deposit; and
 (6) that all the above actions by the defendant constitute an Unfair Trade Practice under Conn. Gen. Stat. 42-110b et seq.
In his count 2, the plaintiff alleges damages from the defendant alleging failure to comply with Conn. Gen. Stat. 35-1 et CT Page 8194 seq., concerning the filing of a trade name certificate.
The defendant answered the complaint and filed a counterclaim alleging extensive damage to the premises over the amount of the security deposit.
At trial, the parties agreed to the following facts:
 (1) The parties entered into a written lease beginning September 1, 1987 and ending August 31, 1988, not August 31, 1987, as recited in the lease, plaintiff's Exhibit A.
 (2) The security deposit paid by the plaintiff was $525.00, not $750.00, as recited in the lease, Plaintiff's Exhibit A.
 (3) Paragraph 4 of count 1 of the complaint is now admitted by the defendant, namely, that the plaintiff paid all rent through July of 1988 rent.
 (4) The defendant received a letter from the plaintiff's attorney, dated August 9, 1988, requesting the return of the plaintiff's security deposit, attorney's fees, and damages.
 (5) On September 27, 1983, a general building permit, permit #18119, was issued, to make interior alterations to the first floor to make a rental apartment at the premises, at 129 Williams Street, Wallingford, Conn.
Based on the evidence produced at trial, the court also finds:
(1) That the defendant failed to obtain the required certificate of compliance as is required under the Town of Wallingford's Code for Housing and Commercial Properties, Section 3.02. (Plaintiff's Exhibit E). Sec. 3.02 provides, in part, that "it is the responsibility of the owner to notify the Code Enforcement Officer of all vacancies in dwelling units" and that "no dwelling unit maybe let until an inspection has been conducted and the certificate of occupancy (compliance) has been issued."
The Town of Wallingford housing code officer, who enforces the Wallingford housing ordinances, testified that once you rent an CT Page 8195 apartment, you need a certificate of compliance under that Section of the Code. She also testified that to the best of her knowledge the Town of Wallingford had never adopted Conn. Gen. Stat. 47a-57; however, the Town did adopt the ordinance establishing the code with regulations, effective in 1972. She testified that on November 3, 1983, there was a certificate of compliance for the first floor efficiency but as of September 1, 1987, when the plaintiff was to move in, there was no certificate of occupancy or certificate of compliance for the premises. She also testified that the language, "Certificate of Occupancy," in Section 3.02 should read as "Certificate of Compliance." Therefore, the plaintiff did prove that the defendant failed to comply with Conn. Gen. Stat. 47a-5. That section provides as follows:
 Sec. 47a-5. (Formerly Sec. 47-24a). No rent recoverable for period of unlawful occupation. In any borough, city or town which requires a certificate of occupancy prior to human habitation of any building located therein, if any building is occupied in whole or in part without such occupancy permit, rent shall not be recoverable by the owner or lessor of the premises for such period of unlawful occupation.
The defendant claimed that because he did have a building permit, he didn't need a certificate of compliance. The defendant provided no evidence to support that claim and therefore, the court finds it is without merit. The defendant admitted he did not get a certificate of compliance from the Town of Wallingford for the apartment. He testified that he didn't believe he needed one. He also testified he was a realtor for 17 years and has rented 15 parcels over the 17 years. It is hard for the court to believe that the defendant with that many years of experience did not understand his obligations under the Town Housing Code.
(2) The defendant did enter the premises in violation of Conn. Gen. Stat. 47a-16, which reads as follows:
 Sec. 47a-16. When landlord may enter rented unit. (a) A tenant shall not unreasonably withhold consent to the landlord to enter into the dwelling unit in order to inspect the premises, make necessary or agreed to repairs, alterations or improvements, supply necessary CT Page 8196 or agreed to services or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workmen or contractors.
 (b) A landlord may enter the dwelling unit without consent of the tenant in case of emergency.
 (c) A landlord shall not abuse the right of entry or use such right of entry to harass the tenant. The landlord shall give the tenant reasonable written or oral notice of his intent to enter and may enter only at reasonable times, except in case of emergency.
 (d) A landlord may not enter the dwelling unit without the consent of the tenant except (1) in case of emergency, (2) as permitted by section 47a-16a, (3) pursuant to a court order, or (4) if the tenant has abandoned or surrendered the premises.
The testimony was uncontroverted that the plaintiff had paid July's rent and that the defendant changed the locks the last week of July and allowed painters on the premises the last week of July. The evidence was also uncontroverted that the plaintiff had not consented to those entries and that the defendant had not sought the plaintiff's consent. The parties provided contradictory stories regarding the sequence of events before the defendant changed the locks and allowed the painters in the apartment. The defendant did not convince the court through his testimony that his actions were protected by any of the exceptions provided in subsection (d) of Conn. Gen. Stat. Sec. 47a-16, above or of 47a-16a. Additionally, the defendant did not plead or prove any of those exceptions to the court's satisfaction.
(3) The defendant failed to return the security deposit or provide an accounting of the plaintiff's security deposit, as is required under 47a-21(d)(1), (2), and (4). Those provisions read as follows:
 (d) Payment of security deposit and interest at termination of tenancy. (1) Within the time specified in subdivisions (2) and (4) of this subsection, the person who is the CT Page 8197 landlord at the time a tenancy is terminated, other than a rent receiver, shall pay to the tenant or former tenant: (A) The amount of any security deposit that was deposited by the tenant with the person who was landlord at the time such security deposit was deposited less the value of any damages which any person who was a landlord of such premises at any time during the tenancy of such tenant has suffered as a result of such tenant's failure to comply with such tenant's obligations; and (B) any accrued interest due on such security deposit as required by subsection (i) of this section. If the landlord at the time of termination of a tenancy is a rent receiver, such rent receiver shall return security deposits in accordance with the provisions of subdivision (3) of this subsection.
 (2) Upon termination of a tenancy, any tenant may notify his landlord in writing of such tenant's forwarding address. Within thirty days after termination of a tenancy, each landlord other than a rent receiver shall deliver to the tenant or former tenant at such forwarding address either (A) the full amount of the security deposit paid by such tenant plus accrued interest as provided in subsection (i) of this section, or (B) the balance of the security deposit paid by such tenant plus accrued interest as provided in subsection (i) of this section after deduction for any damages suffered by such landlord by reason of such tenant's failure to comply with such tenant's obligations, together with a written statement itemizing the nature and amount of such damages. Any such landlord who violates any provision of this subsection shall be liable for twice the value of any security deposit paid by such tenant.
 (4) Any landlord who does not have written notice of his tenant's or former tenant's forwarding address shall deliver any written statement and security deposit due to the CT Page 8198 tenant, as required by subdivision (2) of this subsection, within the time required by subdivision (2) of this subsection or within fifteen days after receiving written notice of such tenant's forwarding address, whichever is later.
The plaintiff testified that he personally asked for his security deposit the last week of July, 1988. His attorney wrote the defendant on August 9, 1988, and requested return on Mr. DeNino's behalf. The defendant testified that he didn't receive the forwarding address from Mr. DeNino and that the damages to the premises exceeded the amount of the security deposit.
(4) The defendant admitted he was doing business as R M Realty and did not file the trade name certificate in Wallingford or Meriden as required under Conn. Gen. Statutes 35-1. That section reads as follows:
 Sec. 35.1. Fictitious trade names forbidden; certificates. Unfair trade practices. No Person, except as hereinafter provided, shall conduct or transact business in this state, under any assumed name, or under any designation, name or style, corporate or otherwise, other than the real name or names of the person or persons conducting or transacting such business, unless there has been filed, in the office of the town clerk in the town in which such business is or is to be conducted or transacted, a certificate stating the name under which such business is or is to be conducted or transacted and the full name and post-office address of each person conducting or transacting such business or, in the case of a corporation using such an assumed name, its full name and principal post-office address. Such certificate shall be executed by all of such persons or, in the case of a corporation, by an authorized officer thereof, and acknowledged before some authority qualified to administer oaths. Each town clerk shall keep an alphabetical index of the names of all persons filing such certificates and of all names or styles CT Page 8199 assumed as hereinbefore provided and, for the indexing and filing of each such certificate, shall receive the statutory filing fee for documents established in section 7-34a, to be paid by the person filing such certificate. A copy of any such certificate, certified by the town clerk in whose office the same has been filed, shall be presumptive evidence, in all courts in this state, of the facts therein contained. The provisions of this section shall not prevent the lawful use of a partnership name or designation if such partnership name or designation includes the true surname of at least one of the persons composing such partnership. This section shall not apply to any limited partnership, as defined in section 34-9, provided such limited partnership has (a) filed a certificate as provided for in section 34-10; or (b) registered with the secretary of the state as provided in section 34-39g. Any person conducting or transacting business in violation of the provisions of this section shall be fined not more than five hundred dollars or imprisoned not more than one year. Failure to comply with the provisions of this section shall be deemed to be an unfair or deceptive trade practice under subsection (a) of section 42-110b. (emphasis added)
The plaintiff testified that he was offended by the fact that he signed the lease with the defendant who signed and represented himself as a partner for R M Realty but had not complied with the proper filings to transact business in that fashion. The defendant admitted he didn't file as required but testified that he didn't know he had to file.
(5) With respect to the defendant's counterclaim for damages. he claims $706.00 in property damage and $375.00 for the August 1988 rent.
 Landlord claims for property damage, like back-rent claims, usually arise either as part of a suit for damages or as a setoff or counterclaim to a tenant's action for return CT Page 8200 of a security deposit. In either case, the burden of proof is on the landlord to establish all elements of the claim, Expressway Associates II v. Friendly Ice Cream Corp. of Connecticut, 218 Conn. 474 (1991); Morris v. Kookoolis, NH-582 (1992) . . . .
 C.G.S. 47a-11 sets out the tenant's statutory duties, of which the most general is the duty to "not wilfully or negligently destroy, deface, damage, impair or remove any part of the premises or permit any other person to do so." C.G.S. 47A-11(F). The tenant is thus liable for wilful or negligent property damage. The lease may also assign responsibility to the tenant, and the tenant is liable for damage resulting from breach of the lease. A lease, however, cannot supersede the landlord's duties under C.G.S. 47a-7, which permits only narrow exceptions to the landlord's maintenance responsibilities. See C.G.S. 47a-7(c) and (d).
 Since tenant liability must be based on wilful or negligent conduct, the mere fact of damage does not necessarily make the tenant liable. Proof of property damage requires evidence, which must be provided even in a case in which the tenant defaults. A mere statement of account is insufficient, since a property of damage claim is not liquidated damages within the meaning of Practice Book 357. The landlord bears the burden of proof on all elements of a damage claim. This means that the landlord must prove that (a) the damage occurred, (b) it exceeded normal wear and tear, and (c) it was caused by the tenant, Kulenski v. Siclari, NH-539 (1990); Stutz v. Andren, SNBR-381 (1992); Lurie v. Baker, NG-499 (1990); Pilagin v. Michalski, H-603 (1985). Damage may be shown either by direct evidence or circumstantially. However, a tenant is not liable for damage that already existed when he moved into the apartment or for damage which occurred after he vacated, Wareck v. CT Page 8201 Connecticut Car Co., NH-557, 6 CSCR 713
(1991); Slaughter v. McFarlane, NH583 (1992) . . . .
 The tenant is also not liable for what is usually described as "normal" or "reasonable" wear and tear, Dell'Oro v. Kelly, SNBR-384 (1992); Grzewinski v. George, H-930 (1989); Opinion of the Attorney General, 6 CLT #38, p. 19 (1980). The determination of what is wear and tear, as distinct from what is property damage, is heavily dependent on the facts of the particular case; but in general it refers to deterioration of or damage to property which can be expected to occur from normal usage. For example, the tenant is not liable for wear to a landlord-provided carpet which reflects normal usage of a rug. . . .
 Wear and tear also includes normal repainting and cleaning which occur at the end of a tenancy. Thus, a tenant is not liable for the cost of cleaning a landlord-provided oven which is left in a moderately, but not perfectly, clean condition, but the tenant may be liable for the cost of cleaning a heavily encrusted oven. The tenant is not liable for nail or pin holes in a plaster wall which would ordinarily be spackled as part of a routine repainting, Bronzi v. Barone, H-533 (1984); Pilagin v. Michalski, H-603 (1985) . . . . Each claim must be evaluated on its own merits, in light of the general principle that some wear and tear is inevitable in rental property. . . .
 The landlord must also establish sufficient evidence of the amount of the damage to remove a judgment from the area of speculation. This will not ordinarily require expert testimony or appraisals, but it does require the presentation of some evidence from which a court can make a reasonable estimate of the amount to be awarded, Clarke v. Mele, SNBR-372 (1992); Collazo v. Dias, NG-555 (1991).
CT Page 8202
 Property damage may be measured by repair cost or by value, as appropriate. Replacement cost is not usually allowed. Thus, if a tenant has destroyed or removed a landlord-provided carpet, the tenant's liability must be adjusted for the age and condition of the carpet, since the tenant is liable only for lost value, Nitch v. Lavoy-Alaimo, H-977 (1992); Bonito v. Lawrence, NH-576 (1992).
 The dollar value of damage may be shown by paid bills or estimates, DiNapoli v. Doudera, 28 Conn. App. 108, 609 A.2d 1061 (1992), Wyatt v. Ghosh, SNBR-366 (1992), but the courts have held that paid bills are more credible. Evidence that the apartment was subsequently rented to another tenant without repairs being made may reduce the credibility of a claim that damage occurred or that it was of substantial impact, Dell'Oro v. Kelly, SNBR-384 (1992). If damage is repaired as part of a larger repair or improvement job, the tenant is liable only for the portion of the repair caused by his negligent or wilful conduct, and the landlord's evidence must provide a method by which the magistrate can determine how much to allocate against the tenant, Sippin v. Ellam, SNBR-338 (1989); Strofolino v. Bordeau, NH-531 (1990). While a magistrate should not impose art unreasonable burden of proof, judges handling property damage claims in landlord-tenant cases have traditionally sought to make sure that such claims are legitimate and that the amount claimed as damages is not inflated, Bonito v. Lawrence, NH-576 (1992).
Small Claims Issues for Magistrates Hearing Housing Cases, The Citizens Advisory Council for Housing Matters, September 3, 1993, pages 9-11.
The court finds that the defendant did not meet his burden of proof on the property damage claims. In particular for the $375.00 claimed for painting and cleaning and the $16.00 claimed for carpet related costs, the defendant did not prove by a preponderance of CT Page 8203 the evidence that the damages were beyond normal wear and tear. This is especially so since the landlord testified that he wasn't going to give the plaintiff a set of new keys or allow him back on the premises when he changed the locks the last week of July 1988. Because of that, the plaintiff was not allowed the opportunity to do any cleaning of the premises that he testified he would have done had he been allowed back on the premises. With respect to the claims for the refrigerator ($315) the landlord has not sustained his burden with respect to the extent of damages to the refrigerator attributable to the plaintiff. Even if the court finds that the refrigerator was not running when the landlord entered the premises and changed the locks, he did not meet his burden of how much of the replacement cost, if any, should be allocated to the tenant.
With respect to the defendant's claim for the August rent, the court finds that claim is totally without merit. The defendant admits he changed the locks in July and wasn't going to give the plaintiff a set of keys to get back into the premises for August. The plaintiff testified that when he found that the locks were changed that he called the defendant who told him that he wanted the plaintiff "out" of the premises. Under this set of facts, the defendant has not provided the court with any legal basis for placing liability for August rent on the tenant, nor has the court found any basis.
With respect to count 1, the court finds that the plaintiff is entitled to the doubling of his $525.00 security deposit, or $1050.00.
The security deposit act applies to all residential landlords, Conn. Gen. Stat. 47a-21(a)(6) and 47a-1(d). The person who is the landlord at the time that the tenant vacates is responsible for returning the deposit. Conn. Gen. Stat. 47a-21(e); Sutton v. Pinto, SNBR 342 1990). The landlord must return the security deposit, plus interest, "within thirty days after the termination of a tenancy." Conn. Gen. Stat. 47a-21(d)(2). In the context of the security deposit act, this refers to the date the tenant vacates. To trigger the time limits, however, the tenant must give the landlord a written notice of his forwarding address. Kulenski v. Siclari, NH#539 (1990). In this case, the plaintiff's attorney sent a letter on August 9, 1988, and requested return of the deposit on the plaintiff's behalf. That letter provided that the payment should be arranged with the attorney. Under numerous interpretations of the security deposit act, notice of the tenant's CT Page 8204 forwarding address is permitted to be supplied by an attorney's letter. Newbold v. Aboudi, NHHD#352 (1968); Ostrower v. Taderosa, NH#288 (1985); Collazo v. Dias, NH#555 (1991). The landlord's duty is to return the security deposit, plus interest, or to account in writing for his claims against the deposit and to return any portion of the deposit, plus interest, against which he has no claim. Conn. Gen. Stat. 47a-21(d). If the landlord withholds any of the deposit, the act requires "a written statement itemizing the nature and amount" of the damages claimed as a result of the tenant's failure to comply with his obligations, C.G.S. 47a-21(d)(2). The itemization must be specific, both as to the nature of the items of damage and as to their costs, Costales v. Gelinas, H-906 (1989). The refund or the accounting must be delivered to the tenant within 30 days after the tenant vacates. The refund must include statutorily-mandated interest on the deposit, Murphy v. Grigas, H-998 (1992). The plaintiff testified he never received a refund or an accounting. The defendant said he never received the address from the tenant. The court, therefore, credits the testimony of the plaintiff and finds that the defendant violated Conn. Gen. Stat. 47a-21(d), by failing to provide the refund or an accounting. Therefore, since the court has found that the landlord violated, Conn. Gen. Stat. 47a-21(d), and since the double damages claim was pleaded, the doubling of the security deposit is mandatory. Kufferman v. Fairfield University, 5 Conn. App. 118
(1985). See City of New Haven, v. Mason, 17 Conn. App. 92 (1988). Therefore, the plaintiff is entitled to $1050.00 in double damages.
Also, under count 1, the tenant has proven to the court's satisfaction a violation of Conn. Gen. Stat. 47a-5; however, the tenant cannot use that Statute as the basis for the recovery of rent previously paid voluntarily to the landlord. Smith v. Dreamy Hollow Apartments Corp., 150 Conn. 702 (1963); Conaway v. Prestia,191 Conn. 484 (1983).
In count 1 and count 2, the plaintiff seeks damages, punitive damages, and attorney's fees under the Connecticut Unfair Trade Practices Act (CUTPA). The plaintiff contends (1) that the failure to obtain the certificate of compliance required by the Wallingford code violates CUTPA; (2) that the landlord's entry onto the premises to paint the premises and change the locks in violation of Conn. Gen. Stat. 47a-16 violates CUTPA; (3) that the failure of the defendant to provide an accounting of the security deposit or return the security deposit in accordance with the security deposit law violates CUTPA; and (4) that the failure to comply with Conn. Gen. Stat. 35-1 violates CUTPA. CT Page 8205
The Connecticut Unfair Trade Practices Act is provided in Conn. Gen. Stat. 42-110a, et seq. Conn. Gen. Stat. 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."
"Person" is defined by Gen. Stat. 42-110a(3) as:
 [A] natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity.
"Trade" and "Commerce" are defined by Conn. Gen. Stat. 110a(4) as:
 [T]he advertising, the sale or rent, or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state. (emphasis added)
To be liable under CUTPA, the defendant must be engaged "in the conduct of any trade or commerce" when committing the unlawful acts. The appropriate focus is upon the status of the CUTPA defendant and whether his alleged actions took place in the conduct of any trade or commerce.
The Supreme Court has ruled that CUTPA applies to residential landlord-tenant transactions, and that a landlord's violation of the public policy of the landlord-tenant act, Conn. Gen. Stat.47a-1, et seq., is a CUTPA violation. Conaway v. Prestia,191 Conn. 484 (1983). See also Sullivan v. Bucci, N.H. #83, 9 CLT #8, p. 20 (Foti, 1982); Leeds v. Wethersfield Gardens, H #368 (1982), holding that the failure to supply utility services can be sufficient to state a cause of action under CUTPA.
Contentions (1) regarding C.G.S. 47a-5, and (2), regarding C.G.S. 47a-16 above, are all violations of the landlord-tenant act and therefore are CUTPA violations. Contention (3), regarding C.G.S. 47a-21 et seq., is a violation of public policy under the security deposit law and therefore violates CUTPA. Contention (4) regarding C.G.S. 35-1, by its own terms, is an unfair or deceptive CT Page 8206 trade practice under C.G.S. 42-110 b(a) and, therefore, violates CUTPA.
Conn. Gen. Stat. 42-110g(a), (d) sets forth the relevant remedies available under CUTPA, in part as follows:
 Sec. 42-110g. Action for damages. Class actions. Costs and fees. Equitable relief. (a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper.
 (d) In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . . . In any action brought under this section, the court may, in its discretion, order, in addition to damages or in lieu of damages, injunctive or other equitable relief.
The court finds that the plaintiff has suffered an "ascertainable loss" with respect to each of the above four contentions. The supreme court in Hinchliffe v. American Motors Corporation, 184 Conn. 607, 614-615 (1981) provides as follows:
 Under CUTPA, there is no need to allege or prove the amount of the ascertainable loss. See Scott v. Western International Surplus Sales, Inc., supra, 516. To satisfy the "ascertainable loss" requirement, a plaintiff CT Page 8207 need prove only that he has purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained. This approach is in keeping with the remedial aims of the statute and will ensure that the private civil action established by the statute will remain a meaningful avenue of redress for consumers who have been the victims of unfair or deceptive trade practices.
The plaintiff signed a written lease for premises assuming the proper municipal approvals were in order, as stated in paragraph 4 of the lease; assuming the landlord would return the security deposit as required under state law and as required under paragraph 2 of the lease; and assuming that the entity with which he was leasing was what it said it was. He clearly received rental premises and conditions of those premises different from that for which he had bargained.
Metro Bulletins Corporation v. Soboleski, 30 Conn. App. 493,499 (1993), provides the relevant public policy for Conn. Gen. Stat. 35-1, as follows:
 There are two possible purposes that might serve. First, it could be intended to protect a trade name from use by competitors, similar to the protection afforded authors and composers by the federal copyright statutes, or second, it could be intended to benefit the public in general and creditors in particular by disclosing the true name and address of the person behind a trade name.
 The general rule is that "[t]he object or purpose of statutes which regulate the doing of business under a fictitious or assumed name is to protect the public by giving notice or information as to the person with whom they deal, and to afford protection against fraud and deceit." (Emphasis added.) 57 Am.Jur.2d, Names 66. Our Supreme Court has recognized this rule as the purpose behind Connecticut's trade name statute by enunciating that "its CT Page 8208 object is to enable a person dealing with another trading under a name not his own, to know the man behind the name, that he may know or make inquiry as to his business character or financial responsibility. . . ." DiBiase v. Garnsey, 103 Conn. 21, 27, 130 A. 81 (1925). The mandated disclosure is "intended for the protection of creditors. . . ." Wofsey v. New York Stamford R. Co., 106 Conn. 254, 258, 138 A. 136 (1927).
The court also finds that the plaintiff is entitled to an award of attorneys' fees under CUTPA. Conn. Gen. Stat. 42-110g(d) provides that the court may award reasonable attorneys' fees "based on the work reasonably performed by an attorney and not on the amount of recovery." The Appellate Court endorsed Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974) which sets forth the factors to be considered by the trial court to determine the amount of attorneys' fees to be awarded under CUTPA. Hernandez v. Monterey Village Associates Limited Partnership, 24 Conn. App. 514, 517, n. 1 (1991). The plaintiffs' submission with respect to attorneys' fees totalling $4,755.00 addresses those factors; however, at trial, defendant's counsel preserved his right to object to the amount of fees if they are awarded by the court. Defendant's counsel, therefore, shall file any detailed objection to the attorneys' fees requested within 10 days and if filed, the clerk will set the matter down for a hearing to determine the fees. If no objection is filed within those 10 days, the $4,755.00 attorneys' fees requested will be deemed reasonable fees and awarded by the court.
An award of punitive damages for a CUTPA violation is discretionary with the court. Conn. Gen. Stat. 42-110g(a). This statutory provision allows for punitive damages, in addition to attorneys' fees and costs, based on a theory of deterrence. See Lenz v. CNA Assurance Co., 42 Conn. Sup. 514, 515 (1993) citing Bailey Employment System. Inc. v. Hahn, 545 F. Sup. 62, 72 (D. Conn. 1982). Such an award must be based on "a reckless indifference to the rights of others or an intentional and wanton violation of those rights." Gargano v. Henry, 203 Conn. 616, 622 (1987). The court finds that this standard has been satisfied by the facts of this case, in that the refusal to return the security deposit, the failure to obtain the necessary Town of Wallingford certificate of compliance, the failure to obtain permission from tenant before entering the premises, and the failure to provide the proper CT Page 8209 filings under Conn. Gen. Stat. 35-1 clearly offend public policy. Accordingly, the court awards the plaintiff the sum of $500.00 as punitive damages for the defendant's conduct with respect to all that conduct, except with respect to the refusal to return the security deposit and with respect to the unlawful entries.
The court declines to make an additional award of punitive damages which would be in addition to the double damages awarded under 47a-21(d)(2). This court finds that the additional $525.00 in double damages awarded under the security deposit statute serves the same purpose of deterrence and punishment which would be achieved by an award of punitive damages under CUTPA for those acts. The court, in the exercise of its discretion, therefore will not award additional punitive damages under CUTPA in addition to double damages already awarded for the security deposit violations.
The court also declines to make an additional award of punitive damages which would be in addition to the statutory damages under 47a-18a for the unlawful entries.
The plaintiff also asked for relief under Conn. Gen. Stat.47a-18a. Under Conn. Gen. Stat. 47a-18a, the tenant may recover actual damages not less than an amount equal to one month's rent and reasonable attorneys' fees if the landlord makes an entry prohibited by section 47a-16 or 47a-16a. The court has found that the landlord has made two such entries, without the consent of the tenant, by allowing painters into the premises and by changing the locks. The court also finds that the plaintiff is entitled to actual damages for the furniture items the plaintiff testified were on the premises before the locks were changed and that the defendant testified were on the premises when he entered before changing the locks. The court finds that amount to be $350.00. Therefore, under this statute, since the actual damages are less than one month's rent, the tenant is awarded the full month's rent for each unpermitted entry, or $1050.00. Attorneys' fees are already provided under CUTPA.
The plaintiff is also entitled to costs of the action.
In conclusion, judgment for the plaintiff in the following amounts on the complaint:
 a) Security Deposit Double Damages: $1050.00 b) 46a-18a Damages 1050.00 CT Page 8210 c) Punitive Damages 500.00 d) Attorneys' fees provided ------- e) Costs ------- ------------------------------------ Total = $2600.00 plus attorneys' fees and costs.
Judgment also for the plaintiff on the defendant's counterclaim.
SO ORDERED.
Clarine Nardi Riddle, Judge