LINDA DiNAPOLI *v.* PATRICIA DOUDERA
(10264)

DALY, LAVERY and FREEDMAN, Js.

Argued May 11—decision released June 30, 1992

*C. Michael Budlong,* with whom, on the brief, was *Steven R. Dembo,* for the appellant (plaintiff).

FREEDMAN, J. This is an appeal by the plaintiff from the judgment of the trial court, rendered after a hearing in damages, awarding to the plaintiff the net sum of $800.25[1] in an action brought to recover for dam-

---

[1] The judgment file shows the net amount of damages to be $50.25. The original memorandum of decision filed by the trial court arrived at this net figure as follows:

age to leased premises caused by the defendant. The plaintiff claims that the trial court's findings and conclusions were contrary to the facts and evidence presented. We agree.

The pertinent undisputed facts are as follows. The plaintiff was the owner of certain residential premises located at 21 Brainard Road in West Hartford. On March 1, 1988, the plaintiff and the defendant entered into a written one year lease of the Brainard Road premises for the monthly rental fee of $1500. The rent was paid by the executor of the estate of the defendant's late husband. Prior to the defendant's taking occupancy of the premises, the plaintiff had spent approximately $28,000 on a thorough renovation of the premises.

Soon after the defendant took possession, the plaintiff noticed that there were boxes "piled solid to the ceiling" in the garage. She also observed numerous boxes about the entire property, including a trash heap in front of the garage. The plaintiff received complaints from neighbors, as well as the town health and fire departments regarding these conditions. The defendant occupied the premises from March 1, 1988, until May 6, 1989, at which time the defendant vacated as a result of "various legal actions."[2]

| | | |
|---|---|---|
| Money spent to rectify damage | | $3463.25 |
| 15 percent Attorney's fee | | 520.00 |
| Sheriff's fee | | 1317.00 |
| | TOTAL | $5300.25 |
| Security deposit credit | | $5250.00 |
| Net to plaintiff | | $50.25 |

The articulation filed by the trial court states, however, that "[a]fter reviewing the bills, claims and the lease, the court finds it erroneously omitted an item concerning gardening costs. They [sic] did not at first realize that the defendant's lease required her to also pay for gardening costs. Therefore, the judgment is corrected to show further damages of $750 or, $4213.25." We, therefore, use the amount of $800.25 as the net damages awarded to the plaintiff.

[2] The plaintiff's brief states that she obtained possession of the premises by virtue of an order of the Superior Court, Housing Session. In the hear-

The plaintiff commenced this action in June, 1988, for damage caused by the defendant to the Brainard Road premises. The defendant's attorney initially appeared and filed an answer to the complaint. Subsequently, the trial court granted the defendant's attorney permission to withdraw, and the defendant thereafter entered a pro se appearance. When the defendant failed to appear at a pretrial conference, the trial court entered a default against her. The trial court ultimately conducted a hearing in damages at which the defendant did not appear.

The plaintiff was the only witness to testify at the hearing in damages. She testified about substantial damage to the premises that occurred during the defendant's occupancy, and presented numerous photographs, paid bills, canceled checks and written estimates in support of her claim for nearly $40,000 in damages, including attorney's fees. She indicated that the damage to the premises included broken garage doors, destroyed walls, ceilings, carpeting, kitchen floors, countertops, broken appliances and light fixtures, damaged exterior siding, and an accumulation of trash and debris in and about the premises. The plaintiff also testified about the unsanitary conditions she found inside the home. After a brief hearing, the trial court awarded to the plaintiff the net sum of $800.25 in damages.[3]

The plaintiff appealed the judgment of the trial court and filed a motion for articulation, requesting that the trial court articulate the facts or evidence it relied on in determining its award to the plaintiff. Among the many factual determinations that the trial court articulated was that "the court has drawn the inference that

ing in damages, this was referred to as "various legal actions." The manner in which the plaintiff obtained possession is, however, of no importance to our resolution of this matter.

[3] See footnote 1, supra.

the absent defendant is an emotionally troubled woman, a fact that was probably known to the plaintiff before entering into the lease agreement." The trial court stated that "the evidence of the defendant's unsanitary living conditions, the feces, etc., and the attempts of her priest and parishioners to assist her to organize and clean her home, suggest instability," all of which the trial court found to be known to the plaintiff. The articulation also stated that the trial court believed "that the plaintiff was aware that this troubled defendant is the major beneficiary of an estate administered by Attorney Martin Wolman of Hartford."

In addition, the trial court found that some of the bills submitted into evidence were "overstated," or were "mere estimates and not bills at all," and that as to some of the bills "there was insufficient evidence to show that these items were damages sustained by the plaintiff as a result of actions by the defendant." As to one bill, the trial court disallowed it because, among other reasons, it believed that the estimator was not an arms length merchant because the estimate contained the following hand written notation: "Linda, Carol and I decided to pass on Mexico this time. Thanks, Ray." The trial court then went on to enumerate the bills that it found to be "proven damages" and those which it "disallowed" in arriving at its final net figure.

"When the factual basis of the trial court's decision is challenged on appeal, the role of this court is to determine whether the facts set out in . . . the decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Cupina* v. *Bernklau,* 17 Conn. App. 159, 161, 551 A.2d 37 (1989). "On appeal, the function of this court is limited solely to the determination of

whether the decision of the trial court is clearly erroneous. . . . This court cannot find facts or draw conclusions from primary facts found, but can only review such findings to determine whether they could have legally, logically and reasonably been found by the trier . . . ." *Robertson* v. *Nationwide Ins. Co.*, 20 Conn. App. 635, 637, 569 A.2d 565 (1990). Where, however, some of the facts found are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. *O'Bymachow* v. *O'Bymachow*, 12 Conn. App. 113, 117, 529 A.2d 747, cert. denied, 205 Conn. 808, 532 A.2d 76 (1987). If, when taken as a whole, "they undermine appellate confidence in the court's fact finding process," a new hearing is required. Id.

We have thoroughly reviewed the record in this matter, including the transcript of the hearing in damages and all of the exhibits presented to the trial court.

We find that there is no evidence from which the trial court could have found (1) that the plaintiff, before entering into the lease agreement, was aware that the defendant was an emotionally troubled woman, (2) that there were attempts by the defendant's priest and parishioners to assist her to organize and to clean her house or, if such was the case, that it was known to the plaintiff, (3) that the plaintiff was aware that the defendant was the *major* beneficiary of an estate, or (4) that the bill containing the notation regarding Mexico was not an arms length transaction. These findings were substantial factors in the trial court's articulation. Because, however, there is no evidence in the record that can reasonably be said to support them, they are clearly erroneous.

As to some of the bills submitted to the court by the plaintiff, the trial court found that they "were mere

estimates" and did not allow them as items of damage because the work had not yet been performed. The plaintiff, however, only bore the burden of affording the factfinder "a sufficient basis for estimating [monetary damages] with reasonable certainty." *Expressway Associates II* v. *Friendly Ice Cream Corporation of Connecticut,* 218 Conn. 474, 477, 590 A.2d 431 (1991). Damages may be based on reasonable and probable estimates. *Bertozzi* v. *McCarthy,* 164 Conn. 463, 468, 323 A.2d 553 (1973). The trial court, therefore, improperly excluded the estimates from its determination of damages.

At least some of the factual findings made by the trial court upon which its award of damages was substantially based were clearly erroneous. Moreover, contrary to the conclusion of the trial court, damages may be based on reasonable and probable estimates.

The judgment is reversed and the case is remanded for a new hearing in damages.

In this opinion the other judges concurred.