******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# CHRISTINE DOWNING *v.* EMMANUEL DRAGONE ET AL.
## (AC 39942)

DiPentima, C. J., and Lavine and Pellegrino, Js.

*Syllabus*

The plaintiff, a professional auctioneer, sought to recover damages for, inter alia, breach of contract from the defendant automobile retail company, D Co., and the defendant E, who operated D Co. with his brother. The parties disagreed as to the appropriate amount of compensation due to the plaintiff for the work that she had performed in connection with D Co.'s classic automobile auction. At trial, E testified that the plaintiff should receive her standard auction fee, plus expenses, that she allegedly requested during a prior meeting with E and his brother. The plaintiff testified that her standard fee did not apply and that the defendants owed her a certain percentage of the gross auction proceeds pursuant to an unsigned, written agreement that she had drafted. The court found that the alleged agreement was an implied in fact contract and that E was charged with knowledge of its contents, including its compensation provision, because E testified that he had that contract on his desk but did not read it until four months after the auction. The court concluded that the plaintiff was entitled to receive a certain percentage of the gross auction proceeds and rendered judgment in part for the plaintiff on her breach of contract claim, from which the defendants appealed to this court. *Held* that the trial court's decision rested on a clearly erroneous factual finding that was not supported by any evidence in the record; there was no evidence from which the trial court could have found that E testified that he had the written contract on his desk but did not read it until four months after the auction, and because the court substantially relied on that factual finding when it found in favor of the plaintiff on her breach of contract claim and, more specifically, when it reasoned that E was charged with knowledge of the contents of the contract, including its compensation provision, a new trial on the breach of contract claim was necessary.

Argued February 22—officially released September 11, 2018

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Lee, J.*; judgment for the plaintiff in part, from which the defendants appealed to this court. *Reversed in part*; *new trial*.

*Edward T. Murnane, Jr.*, for the appellant (defendant Dragone Classic Motorcars, Inc.).

*Jeffrey Hellman*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. The plaintiff, Christine Downing, brought this action to recover money owed for services she is alleged to have rendered in accordance with an agreement she had with the defendant Dragone Classic Motorcars, Inc.[1] After a trial to the court, the court found in favor of the plaintiff on her breach of contract claim and rendered judgment accordingly. On appeal, the defendant principally claims that the trial court based its legal conclusions on a clearly erroneous finding of fact.[2] We agree with the defendant and, therefore, reverse in part the judgment of the trial court and remand the case for further proceedings.

The trial court's memorandum of decision and the record reveal the following relevant facts and procedural history. The plaintiff is an experienced auctioneer. While working as an auctioneer, she met George Dragone (George). George and his brother, Emmanuel Dragone (Emmanuel), operate the defendant company, a used and classic car retail business. In the summer of 2011, George told the plaintiff that the defendant was considering staging its first, "very upscale" auction of classic cars. On January 4, 2012, Emmanuel sent the plaintiff an e-mail, "saying that [he and George] had decided to hold two auctions in the coming year, and that they would like her to serve as their auctioneer."

On January 26, 2012, George and Emmanuel held an initial meeting regarding the planned auctions, which the plaintiff attended. The first auction was set to take place on May 12, 2012,[3] and also would be the plaintiff's first auction of classic cars. During the initial meeting, the parties discussed the plaintiff's expected compensation. According to Emmanuel, "[the plaintiff] told him . . . that she charged $2500 to conduct an auction, and that this is what he believed [they] owed her, plus expenses." The plaintiff testified, however, "that $2500 is her standard fee for services on auction day," and because the May auction involved setting up a "first-time auction," she would need to do additional work. Because of this, she informed Emmanuel that she, therefore, required greater compensation. The court found that, on January 26, 2012, "[the plaintiff] advised [Emmanuel] . . . that she would require a fee of 1 percent of the auction's gross [proceeds], with a minimum of $30,000, which she said was standard when an auctioneer also sets up the auction." She testified that, following the initial discussion, she drafted a written contract reflecting "that their agreement was for 1 percent of gross [auction proceeds], plus expenses."

At trial, the court admitted into evidence a document that the plaintiff claimed set forth the terms of her agreement with the defendant (document). The document, dated February 2, 2012, was titled, "Agreement for Christine Downing to serve as Auction Consultant

for Dragone Classic Auctions (DCA) for their inaugural auction to be held on May 12, 2012." The document stated that she "contract[ed] to provide" certain services in connection with the auction and, specifically, "provide[d] for compensation of 1 percent of gross auction proceeds, with a minimum payment of $30,000, payable one-third by April 1, [2012], and the balance within ten days after the auction."[4] The court found that this document "[did] not contain signature lines for either party," and neither party signed it.

The court found that the plaintiff "admitted that the document contained some terms that she had not discussed with [Emmanuel], but also stated that she did not hear anything from him or anyone else contradicting the terms. She maintained that they had discussed, and he had agreed, to compensation of 1 percent of the [gross] auction sales." Additionally, the court found that "[the plaintiff] testified that she tried to hand this document to [Emmanuel] but was told to put it on his desk. [Emmanuel] testified that he had the document on his desk but did not read it until four months after the auction."

The court credited the plaintiff's testimony that she devoted substantial time—approximately 420 hours—to the planning and organization of the May auction. On the basis of the evidence, the court found that "[the plaintiff] substantially performed the obligations listed in [the document], including . . . conducting the automobile auction itself." It further determined that "[a]pproximately $4.1 million in gross sales was realized [during the auction] and subsequent related sales." And although the plaintiff made demands for payment and attempted to set up meetings with George and Emmanuel for six months after the auction, her efforts were to no avail.[5]

On June 6, 2013, the plaintiff commenced the underlying action. In a two count complaint directed against Emmanuel and the defendant; see footnote 1 of this opinion; she alleged (1) breach of contract[6] and (2) unjust enrichment. In its memorandum of decision filed on December 7, 2016, the court found against the defendant on count one, and in favor of the defendant on count two.[7] This appeal followed. Additional facts will be set forth as necessary.

As an initial matter, we address the plaintiff's claim that the defendant waived all of its claims on appeal by failing to include them in the preliminary statement of issues. The defendant's preliminary statement presented the following issues for appeal: "(1) Did the trial court err in rendering judgment for the plaintiff?; [and] (2) Such other issues as may become apparent upon a review of the record." The plaintiff argues that she was prejudiced by the defendant's preliminary statement because (1) she could not timely file a corresponding preliminary statement of issues and (2) was forced to

pay expedited pricing for portions of the transcript.

Practice Book § 63-4 (a) provides in relevant part: "Within ten days of filing an appeal, the appellant shall also file with the appellate clerk the following:

"(1) A preliminary statement of the issues intended for presentation on appeal. . . .

"Whenever the failure to identify an issue in a preliminary statement of issues prejudices an opposing party, the [appellate] court may refuse to consider such issue."

Although we do not condone the defendant's inadequate presentation of the issues for review in its preliminary statement, we review the merits of its central claim; see footnote 2 of this opinion; because we conclude that the plaintiff has failed to demonstrate that she was prejudiced. She fully responded to the defendant's claims in her appellate brief and presented oral argument before this court. See, e.g., *Mickey* v. *Mickey*, 292 Conn. 597, 603 n.9, 974 A.2d 641 (2009) (plaintiff failed to raise alternative grounds to affirm in preliminary statement, but Supreme Court reviewed claims because defendant was not prejudiced by procedural defect).

We now turn to the dispositive issue raised in this appeal. The defendant claims that the trial court based its legal conclusions on a clearly erroneous factual finding. More specifically, the defendant argues that the trial court imputed to Emmanuel knowledge of the contents of the document submitted into evidence by the plaintiff, which described her compensation as being 1 percent of the gross auction proceeds, with a minimum payment of $30,000. The defendant contends that the trial court reached this decision on the basis of its finding that "[Emmanuel] testified that he had the document on his desk but did not read it until four months after the auction." According to the defendant, this latter finding is clearly erroneous and was the "linchpin" of the trial court's reasoning. We agree.

In its memorandum of decision, the court found that an implied in fact contract existed between the parties.[8] According to the court, "[t]he fact that [Emmanuel] claim[ed] that he did not read the contract until several months after the auction [was] no defense to [the plaintiff's] claim for compensation." The court determined that "the evidence showed that [the plaintiff] gave [Emmanuel] the contract, which specified compensation of 1 percent of gross proceeds of the auction, with a minimum payment of $30,000. There [was] no question that the [defendant] knew that [the plaintiff] expected to be paid for her services and that she, in fact, did provide substantial services in preparation for, and in the conduct of, the classic car auction." It reasoned that "[Emmanuel] [was] charged with knowledge of the contents of the contract" because the plaintiff gave it to him, and he simply did not read it. The court thus

concluded that the plaintiff was "entitled to receive compensation of 1 percent of the gross auction proceeds," which it found to be $41,000.

We now set forth the relevant legal principles governing our review. "[W]here the factual basis of the [trial] court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *LeBlanc* v. *New England Raceway, LLC*, 116 Conn. App. 267, 280, 976 A.2d 750 (2009). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Proctor*, 324 Conn. 245, 258–59, 152 A.3d 470 (2016). "It is well settled that the existence of an implied in fact contract is a question of fact for the trier." Id., 258.

"Where . . . some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's fact finding process, a new hearing is required." (Internal quotation marks omitted.) *LeBlanc* v. *New England Raceway, LLC*, supra, 116 Conn. App. 281; see also *DiNapoli* v. *Doudera*, 28 Conn. App. 108, 112, 609 A.2d 1061 (1992).

The defendant concedes that "the plaintiff performed work as an auctioneer for the defendant [and] that the plaintiff performed some work in helping to organize and prepare for the [car] auction." According to the defendant, the only disagreement between the parties "concerns the amount of the plaintiff's compensation."

We thoroughly have reviewed the record and conclude that the trial court's decision rests on a clearly erroneous factual finding. There is no evidence from which the trial court could have found that "[Emmanuel] *testified* that he had the document on his desk *but did not read it until four months after the auction*."[9] (Emphasis added.) The plaintiff, in fact, conceded during oral argument before this court that this latter finding was an "error." The trial court relied on this factual

finding when it found in favor of the plaintiff on her breach of contract claim.[10] Significantly, the court reasoned that "[Emmanuel] [was] charged with knowledge of the contents of the contract," specifically, the portion dealing with the alleged compensation provision, despite "[his claim] that he did not read the contract until several months after the auction . . . ." The court's memorandum of decision, therefore, demonstrates that, in imputing the terms of the document to the defendant, the court relied on what it thought to be Emmanuel's own testimony. More specifically, the court relied on "[*Emmanuel's claim*] *that he did not read the contract until several months after the auction . . . .*"[11] At trial, Emmanuel did not so testify. Accordingly, we conclude that the trial court's reasoning substantially relied on a clearly erroneous factual finding, requiring a new trial. See, e.g., *DiNapoli* v. *Doudera*, supra, 28 Conn. App. 112–13 (new hearing in damages required where trial court "substantially based" its award on clearly erroneous factual findings); cf. *LeBlanc* v. *New England Raceway, LLC*, supra, 116 Conn. App. 281–82 (even if factual finding was incorrect, it was harmless because this court "[was] not persuaded that [the] finding formed the basis of the [trial] court's judgment").[12]

In reaching its decision, the trial court relied on this court's decision in *Sandella* v. *Dick Corp.*, 53 Conn. App. 213, 729 A.2d 813, cert. denied, 249 Conn. 926, 733 A.2d 849 (1999). In *Sandella*, this court held that the jury reasonably could have inferred that an "implied contract" existed between the parties on the basis of a letter in the cross claim defendant's possession that it neither signed nor returned. See id., 216–17, 219–22. This court noted that the jury reasonably could have determined that the cross claim defendant's "failure to decline the conditions [set forth in the letter] was an implied acceptance of its conditions." Id., 220. *Sandella* did not involve a situation where the trier of fact relied on a clearly erroneous factual finding, however, and is, therefore, distinguishable.

The judgment is reversed in part and the case is remanded for a new trial only as to count one of the plaintiff's complaint. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The plaintiff also commenced this action against the named defendant, Emmanuel Dragone (Emmanuel). The trial court did not find Emmanuel to be liable under either count of the plaintiff's two count complaint. The court rendered judgment only against Dragone Classic Motorcars, Inc. Counsel for Emmanuel and Dragone Classic Motorcars, Inc., filed an appeal on behalf of both defendants. Emmanuel, however, did not file a separate brief in this appeal, and he is not personally aggrieved by the trial court's judgment. See General Statutes § 52-263. We therefore refer to Dragone Classic Motorcars, Inc., as the defendant in this opinion.

[2] The defendant also claims that the plaintiff: (1) failed to prove "mutual assent or a meeting of the minds, as required to form an express or implied contract"; (2) "failed to prove what her services were reasonably worth"; (3) "harbored a secret intention that [was] not an enforceable contract

provision"; and (4) needed to present expert testimony to establish "industry standards" and "to explain the phrase 'gross auction proceeds.' " Because we conclude that the trial court based its legal conclusions substantially on a clearly erroneous factual finding, we do not address these additional claims. Additionally, the defendant withdrew its claim that the trial court "relied on an exhibit for identification to calculate damages," after conceding that the exhibit was, in fact, admitted as a full exhibit.

[3] The auction was eventually held on May 19, 2012.

[4] The portion of the document allegedly addressing the plaintiff's compensation provided as follows: "As compensation for the above duties, I require [1 percent] of the gross auction proceeds, with a minimum payment of $30,000. I would like [one third] of the minimum, $10,000, to be paid by April 1, 2012. The remaining balance is due within [ten] days of the auction, which is May 22, 2012. If you wish to make any amendments or additions to this agreement, please notify me within [ten] days of your desire to do so."

[5] The court found that, although the defendant's financial manager prepared a check for approximately $3800, representing a fee of $2500 plus expenses, the plaintiff did not receive this check, and it was not cashed.

[6] In count one of her complaint, the plaintiff alleged that "[a] written contract" outlined her obligations and compensation according to the parties' agreement and that she "performed the duties outlined in the contract." Notwithstanding her allegations, the trial court found that an implied in fact contract existed under the circumstances. See footnote 8 of this opinion. On appeal, the defendant does not argue that the court could not make such a finding due to the plaintiff's allegations.

[7] Because the court rendered judgment for the defendant on the unjust enrichment count and the plaintiff did not file an appeal or cross appeal, we do not discuss the second count further in this opinion.

[8] The court "[found] that the defendants breached an implied contract" but did not specify whether it was one implied in fact or one implied in law. "The term 'implied contract' . . . often leads to confusion because it can refer to an implied in fact contract or to an implied in law contract." *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 573, 898 A.2d 178 (2006).

The plaintiff argues in her appellate brief, and conceded during oral argument before this court, that "the court found the existence of an implied in fact contract." As noted by our Supreme Court, "an implied in law contract is another name for a claim for unjust enrichment." *Vertex, Inc.* v. *Waterbury*, supra, 278 Conn. 574. The trial court determined that the plaintiff had failed to prove the value of her services to the defendants and, therefore, could not prevail on her unjust enrichment claim, and that "such an award would be duplicative and inconsistent with an award for breach of contract and would not be allowed." See, e.g., *Connecticut Light & Power Co.* v. *Proctor*, 158 Conn. App. 248, 251 n.7, 118 A.3d 702 (2015) ("[a] court . . . cannot grant relief on a theory of unjust enrichment unless the court first finds that there was no contract between the parties"), aff'd, 324 Conn. 245, 152 A.3d 470 (2016). Because "an implied in law contract is another name for a claim for unjust enrichment"; *Vertex, Inc.* v. *Waterbury*, supra, 574; and the court found against the plaintiff on her claim for unjust enrichment, we, too, understand the court to have found that an implied in fact contract existed under the circumstances.

[9] During direct examination, Emmanuel testified in relevant part as follows:

"[The Plaintiff's Counsel]: Showing you what's been marked exhibit 1 [the document]. Do you recognize it?

"[Emmanuel]: Yes.

"[The Plaintiff's Counsel]: Okay. And when did you first receive exhibit 1?

"[Emmanuel]: It was placed on my desk four months after the auction.

"[The Plaintiff's Counsel]: Okay. You're claiming you did not receive it on or about February 2, 2012?

"[Emmanuel]: Absolutely not.

"[The Plaintiff's Counsel]: Okay. But you did receive it afterwards?

"[Emmanuel]: Four months after the auction.

* * *

"[The Plaintiff's Counsel]: [Emmanuel], how did you receive this document?

"[Emmanuel]: It was placed on my desk four months after the auction; it was just laying on my desk in Westport.

"[The Plaintiff's Counsel]: Do you know who placed it on your desk?

"[Emmanuel]: It either had to be [the plaintiff] or David Bate [a former employee]. There was no one else that had any knowledge of this."

[10] It is significant that, under the present circumstances, the trial court did not rely on a credibility determination. See, e.g., *Stewart* v. *King*, 121 Conn. App. 64, 74 n.5, 994 A.2d 308 (2010) (court made no credibility determinations, but ruling on claim "include[d] implicit findings that it resolved any credibility determinations and issues involving the testimony in a manner that supports its ruling"); *LeBlanc* v. *New England Raceway, LLC*, supra, 116 Conn. App. 274 ("[a]s a reviewing court [w]e must defer to the trier of fact's assessment of the credibility of the witnesses" [internal quotation marks omitted]). Rather, the trial court's memorandum of decision demonstrates that its legal reasoning was substantially based on *specific testimony* that it attributed to Emmanuel that did not, in fact, take place at trial.

[11] Our conclusion is further supported by statements made by the trial court during oral argument. In one instance, the following colloquy occurred between the court and counsel for the plaintiff:

"[The Plaintiff's Counsel]: Let's also look a little bit at some of the things that are undisputed. [Emmanuel] admits that he received exhibit 1 [the document]. He said it was on his desk. [The plaintiff] said she left it on his desk. The only thing they disagree about is when it was left on his desk. She says it was left on his desk in February, [2012], long before the auction. He says it was left on his desk after the auction, months after his—

"The Court: I don't think so. *I understood* [*Emmanuel*] *as like he saw it after the auction.*

"[The Plaintiff's Counsel]: I think that's correct, Your Honor. I think you're correct." (Emphasis added.)

Later on, when counsel for the plaintiff explained why the defendant breached a contract between the parties, the court also stated in relevant part: "And I think it's important that [*Emmanuel*] *did acknowledge that he had the contract somewhere on his desk or somewhere. He hasn't said,* [*I've*] *never seen this before.*" (Emphasis added.)

[12] The plaintiff argues that we may affirm the trial court's judgment on the alternative ground that she sufficiently proved a breach of an express contract. The trial court did not find that an express contract existed. As an appellate court, we may not find facts. See, e.g., *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 106, 84 A.3d 828 (2014) ("[i]t is elementary that neither [the Supreme Court] nor the Appellate Court can find facts in the first instance"); *Positive Impact Corp.* v. *Indotronix International Corp.*, 96 Conn. App. 361, 364, 900 A.2d 535 (existence of contract is question of fact), cert. denied, 280 Conn. 915, 908 A.2d 538 (2006).