******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

C. W. *v.* E. W. ET AL.*
(AC 46122)

Alvord, Suarez and Lavine, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants for, inter alia, breach of contract and unjust enrichment in connection with an alleged oral agreement pursuant to which the defendants agreed to sell to the plaintiff certain residential property after he performed repairs to it. The plaintiff claimed that he expended substantial funds and personal labor with the understanding that the agreed upon purchase price would be in compensation for the labor and materials he supplied. The defendants filed an answer to the amended complaint, asserting that they did not agree to sell the property to the plaintiff. At trial, the court admitted into evidence an exhibit offered by the plaintiff that documented the tasks that the plaintiff claimed to have performed at the property and his hours worked. The plaintiff testified that he used a project management software program to create the table of tasks in the exhibit from data that he contemporaneously entered as he worked. The court found that, although there was no agreement to sell the property, the plaintiff had incurred certain costs for materials and labor to rehabilitate the property and rendered judgment for the plaintiff on his unjust enrichment claim. In awarding the plaintiff damages for his labor, the court found that the plaintiff's evidence of his labor was unreliable, specifically, his exhibit documenting the number of hours he had worked, and, instead, relied on E's valuation of the plaintiff's services. On the plaintiff's appeal to this court, *held*:

1. The plaintiff could not prevail on his claim that the trial court improperly rendered judgment for the defendants on his breach of contract claim because the court failed to consider judicial admissions allegedly made by the defendants in their original answers as to the existence of a contract: although the defendants' original answers asserted that they had agreed to sell the property for a reduced price because the plaintiff is the defendant E's son, the defendants' amended answer denied the existence of an agreement, which was consistent with E's testimony at trial; moreover, the amended answer had been filed more than two

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

months before trial, and the plaintiff had filed a reply to the special defenses asserted therein.

2. The trial court, in ruling on the plaintiff's unjust enrichment claim, erred in finding that the plaintiff's evidence of his labor was unreliable: the court's decision rested on clearly erroneous factual findings as to how the exhibit depicting the plaintiff's logged work hours was created, as the plaintiff's uncontroverted testimony was that his hours were recorded contemporaneously and that he had entered his hours into the computer program, which recorded the hours over a period of time, not that the hours were based on the plaintiff's memory as to the number of hours worked, or that they were a product of computations created by the software; moreover, because the trial court's clearly erroneous factual findings as to the plaintiff's exhibit constituted harmful error, this court concluded that the plaintiff was entitled to a new trial as to his unjust enrichment and quantum meruit claims.

Submitted on briefs February 13—officially released June 11, 2024

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the case was tried to the court, *Hon. Joseph H. Pellegrino*, judge trial referee; judgment in part for the defendants, from which the plaintiff appealed to this court; thereafter, the plaintiff withdrew the remaining count of the complaint and filed an amended appeal. *Reversed in part*; *further proceedings*.

*Bruce P. Bennett*, for the appellant (plaintiff).

*E. W.* and *A. W.*, self-represented, the appellees (defendants).

*Opinion*

ALVORD, J. The plaintiff, C. W., appeals from the judgment of the trial court rendered following a court trial in an action seeking enforcement of an alleged oral agreement pursuant to which the self-represented defendants, E. W. and A. W., would sell the plaintiff real property in Waterbury after he performed repairs to it. On appeal, the plaintiff claims that the court

improperly (1) rendered judgment in favor of the defendants on the plaintiff's breach of contract claim after failing to consider judicial admissions allegedly made by the defendants as to the existence of the contract, and (2) found, in the portion of its memorandum of decision addressing the plaintiff's unjust enrichment claim, the plaintiff's evidence of his labor at the property to be unreliable.[1] We agree with the plaintiff's second claim and, accordingly, we reverse the judgment in part.[2]

The following facts, as found by the trial court, and procedural history are relevant to this appeal. In 2009, E. W., who had immigrated to the United States from Jamaica, purchased with his sister, A. W., real property located in Waterbury (property). In 2014, the plaintiff, who is E. W.'s son, also immigrated to the United States from Jamaica. E. W. encouraged the plaintiff to come to the United States and undertook the responsibilities of providing the plaintiff with shelter and support. When the plaintiff arrived in the United States, he initially stayed with E. W. in New York, but there was no bedroom available for him and disagreements ensued among family members. As a result, E. W. drove the plaintiff to Connecticut to live at the property and told him that he could live there so long as he paid the taxes on the property. At that time, the third floor of the property was habitable but the first and second floors

---

[1] See footnote 7 of this opinion. The plaintiff also states, in his statement of issues, that the court erred in failing to address real property taxes paid by the plaintiff and in declining to award damages for the plaintiff's expenditures related to electrical repairs. Aside from that statement, the only other mention of these two claims is in the nature of a conclusion in the plaintiff's brief. "[When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Darin* v. *Cais*, 161 Conn. App. 475, 483, 129 A.3d 716 (2015). We conclude that these claims are inadequately briefed and, accordingly, we decline to address them.

[2] See footnote 11 of this opinion.

were not. The plaintiff assisted E. W., who provided expertise, in the rehabilitation of the first and second floors of the property. The plaintiff worked on the property in some instances by himself when E. W. was not present, purchased materials, and provided labor to accomplish the repairs. A. W. was aware of the work the plaintiff was performing at the property.

The plaintiff commenced the present action in January, 2020. In the operative, amended complaint filed in May, 2022, the plaintiff alleged causes of action sounding in breach of contract, fraudulent misrepresentation, unjust enrichment, quantum meruit, detrimental reliance, and bad faith. He also sought foreclosure of a mechanic's lien that he had recorded on the land records relating to work he claimed to have performed at the property. In count one, the plaintiff alleged that E. W. told the plaintiff in March, 2015, that he did not want to devote any additional funds or efforts to repair the property, the defendants would sell the property to the plaintiff for $35,000, and the plaintiff should obtain a mortgage to purchase the property.[3] The plaintiff alleged that, because he could not obtain a mortgage to purchase the property due to the property being in a state of disrepair, the defendants agreed that the plaintiff would repair the property and, upon completion of the repairs, the plaintiff would obtain a mortgage and the defendants would sell him the property for

[3] In counts two and five of the amended complaint, the plaintiff alleged fraudulent misrepresentation and detrimental reliance, on the basis of the allegations that the defendants represented to the plaintiff that he could reside at the property rent free and purchase the property for $35,000. The plaintiff alleged that the defendants had the intent of inducing the plaintiff to expend personal labor and funds to repair the property. The plaintiff further alleged that the representations were knowingly material, false and misleading and that the plaintiff relied on the representations to his detriment.

In count six, the plaintiff alleged that the defendants' conduct was malicious and evidenced a reckless disregard for his rights.

In count seven, the plaintiff sought foreclosure of the mechanic's lien.

$35,000. The plaintiff alleged that he expended substantial funds and personal labor with the understanding that the $35,000 purchase price of the property would be in compensation for the labor and materials he supplied. The plaintiff alleged that he requested, in August, 2019, that the defendants put their agreement into writing so that he could obtain a mortgage, but the defendants refused to do so. The plaintiff alleged that the defendants subsequently breached the alleged oral contract in various ways, including informing the plaintiff that he would have to pay rent, listing the property at a sale price of $125,000, removing his personal belongings from the property, informing the plaintiff that he could purchase the property for $60,000, rather than the previously agreed upon price of $35,000, serving him with a notice to quit, and commencing a summary process eviction action against him.

In count three, the plaintiff alleged a claim for unjust enrichment. Specifically, the plaintiff alleged that he provided substantial labor and materials toward the improvement of the property and the defendants unjustly refused to reimburse or compensate him. The plaintiff alleged that the defendants benefitted from his labor and materials and have been unjustly enriched at the plaintiff's expense. In count four, the plaintiff asserted a quantum meruit claim. He alleged, inter alia, that the reasonable value of the labor and funds he had expended was at least $135,000, and that he is entitled to compensation in that amount.

The defendants filed an answer and special defenses on May 23, 2022; see footnote 5 of this opinion; and the plaintiff filed a reply denying the allegations of the special defenses on August 2, 2022.

A trial was held before the court over several dates in August and September, 2022. In addition to his own testimony, the plaintiff presented the testimony of Alan

Thomas O'Doherty, a licensed real estate salesperson who testified as to the amount for which the property could sell; Clyde Saunders, an expert in the construction industry; and Martin Gail, an electrician who testified to electrical work performed at the property. The defendants presented the testimony of E. W.; H. I., a son of E. W.; and J. T., a tenant at the property. The court also received documentary evidence, and all parties submitted posttrial briefs.

On December 9, 2022, the court issued a memorandum of decision in which it found that "there was neither an express written agreement nor was there any oral agreement to sell the property." The court, accordingly, ruled in favor of the defendants on the breach of contract, fraudulent misrepresentation, detrimental reliance, and bad faith counts. As to the plaintiff's unjust enrichment claim; see footnote 11 of this opinion; the court found that the plaintiff provided materials to rehabilitate the property, the defendants were aware of and benefitted from the materials, and, thus, the plaintiff was entitled to reimbursement in the amount of $11,999.63. With respect to labor, the court found the value of the plaintiff's work at the property to be $1768 and awarded him that amount. The total award in favor of the plaintiff was $13,767.63. See footnote 10 of this opinion. This appeal followed.[4] Additional facts and procedural history will be set forth as necessary.

[4] As to the foreclosure of the mechanic's lien, the court stated in its memorandum of decision that "[t]he plaintiff must wait twenty days after the judgment in this case is filed and if no appeal is filed, he may seek to foreclose the amount of this judgment." On May 5, 2023, this court ordered the parties to file memoranda "addressing whether this appeal should be dismissed for lack of a final judgment because the trial court's decision did not dispose of all counts of the complaint or of all the causes of action brought by or against any party . . . unless the plaintiff withdraws the outstanding seventh count of the operative complaint seeking foreclosure of a mechanic's lien and files an amended appeal on or before May 15, 2023." (Citations omitted.) On May 15, the plaintiff withdrew the foreclosure count and filed a response to the order in which he notified this court of the withdrawal. On June 28, 2023, this court ordered that the appeal would

I

The plaintiff's first claim on appeal is that the court erred in rejecting his breach of contract claim on the basis that it failed to recognize that the defendants judicially admitted, in their March, 2020 answers to the plaintiff's original complaint, that they had agreed to sell the property to the plaintiff. We are not persuaded.

The following additional procedural history is relevant. In the plaintiff's original complaint, he alleged that, "[o]n or about November 4, 2019, in contravention of the 2014 agreement, the defendants informed the plaintiff that rather than the $35,000 purchase price previously agreed to pursuant to the 2014 agreement, the purchase price would be $60,000." In answers filed on March 6 and 9, 2020, E. W. responded to this allegation by stating: "Denies as to the allegation contained in the first part of this paragraph 18 that states 'in contravention of the 2014 agreement.' [E. W.] admits to the second part of the allegation to the extent it states that the defendant agreed to sell the property to his son, the plaintiff herein, for $60,000 instead of the market price/listed price of $125,000. The only consideration for [E. W.] to reduce this price was that the plaintiff is a son of the defendant, [E. W.]." In A. W.'s March 6, 2020 answer, she responded similarly, with the exception of identifying the plaintiff as her nephew.

On May 9, 2022, the plaintiff filed an amended complaint with a similar allegation. In the defendants' joint answer; see footnote 5 of this opinion; they asserted: "Objection, there cannot be a breach as the defendants . . . have no agreement with the plaintiff to repair and sell property to the plaintiff." At trial, E. W. testified

be dismissed unless the plaintiff filed an amended appeal on or before July 10, 2023. On July 5, 2023, the plaintiff amended his appeal to reflect the withdrawal.

that he did not agree to sell the property to the plaintiff for $35,000.

Although the plaintiff raised his judicial admission claim in his testimony and posttrial brief, he relied on the answers filed by the defendants to his original complaint. He did not brief the effect of the answer filed by the defendants to his amended complaint. In its memorandum of decision, the court found that "there was neither an express written agreement nor was there any oral agreement to sell the property."

The following legal principles are relevant to our resolution of this claim. "An admission in a defendant's answer to an allegation in a complaint is binding as a judicial admission. . . . A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it. . . . Upon the amendment of the original answer, the superseded pleading ceases to be a conclusive judicial admission and becomes nothing more than an evidentiary admission to be weighed and considered by the trial court along with the rest of the evidence." (Citations omitted; internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, 52 Conn. App. 545, 550–51, 727 A.2d 755 (1999), aff'd, 253 Conn. 416, 752 A.2d 509 (2000).

In the present case, the defendants filed an amended answer shortly after the plaintiff amended his complaint.[5] The amended answer was filed more than two months before trial began, and the plaintiff filed a reply to the special defenses asserted therein. In their

---

[5] The plaintiff contends that the operative responsive pleadings are the original, March, 2020 answers filed in response to the plaintiff's original complaint. We are not persuaded. Although the answer to the amended complaint was filed by the self-represented defendants under the heading "objection to the plaintiff's second amended complaint" and the court marked it "overruled," the filing in substance consisted of an answer with special defenses, and the plaintiff filed a reply to it.

amended answer, the defendants denied the existence of an agreement to sell the property to the plaintiff, and the denial of any agreement was consistent with the defendants' position during the trial. Accordingly, the plaintiff's claim that the responses contained in the defendants' original answers constituted judicial admissions that there existed an agreement to sell the property is without merit. See, e.g., *Crowell* v. *Danforth*, 222 Conn. 150, 155, 609 A.2d 654 (1992). To the extent that the plaintiff requests this court to treat the superseded responses as evidentiary admissions, we decline to do so. See *Downing* v. *Dragone*, 216 Conn. App. 306, 331, 285 A.3d 59 (2022) ("[t]his court will not reweigh the evidence or resolve questions of credibility" (internal quotation marks omitted)), cert. denied, 346 Conn. 903, 287 A.3d 601 (2023). Accordingly, we reject the plaintiff's claim.[6]

## II

The plaintiff next claims that, in its memorandum of decision, the court improperly found his evidence of his labor at the property to be unreliable, after admitting the document that set forth his work as a full exhibit at trial. The defendants respond that the court properly rejected exhibit 7 "for lack of trustworthiness and reliability." We agree with the plaintiff.

---

[6] The plaintiff also argues that the court's citation to the statute of frauds, set forth in General Statutes § 52-550, in rejecting his breach of contract claim, was improper. It is unnecessary for this court to consider the merits of a claim of error that is unrelated to the grounds on which the court based its judgment. See, e.g., *Ingels* v. *Saldana*, 103 Conn. App. 724, 728–29, 930 A.2d 774 (2007) (court declined to address merits of appellant's claim of error related to breach of contract claim because trial court based its decision on breach of fiduciary duty claim and, thus, claimed error was "irrelevant to the judgment from which the defendant appeal[ed]"). Because the court expressly found that "there was neither an express written agreement *nor was there any oral agreement to sell the property*," we need not address any contention that the court improperly relied on the statute of frauds in denying the plaintiff's breach of contract claim. (Emphasis added).

The following additional procedural history is relevant to our resolution of this claim. At trial, the plaintiff's counsel offered into evidence, as exhibit 7, a document reflecting, inter alia, the tasks the plaintiff claimed to have performed at the property and the number of hours he spent performing each task. The plaintiff's counsel represented that exhibit 7 also included statistics published by the Connecticut Department of Labor as to the annual median wage of tradespeople performing labor tasks similar to those identified by the plaintiff. The defendants objected to the admission of the exhibit on a number of different bases, none of which implicated hearsay or the reliability of the software program used by the plaintiff to record his hours worked. The court ruled that the evidence of the labor rates was inadmissible and, following the request by the plaintiff's counsel that it take judicial notice of the labor rates, declined to do so.[7] Exhibit 7 otherwise was admitted into evidence as a full exhibit.[8]

The plaintiff testified that he is an information technology professional by trade and had used the computer application Microsoft Project, a project management software program, as a recording tool in connection

---

[7] On appeal, the plaintiff also claims that the court erred in failing to take judicial notice of the labor rates and in declining to recognize the testimony of the plaintiff's expert witness in support of the plaintiff's proposed value of his labor. The plaintiff also claims that the court erred in accepting E. W.'s valuation of the plaintiff's work on the project. Because we reverse the judgment of the trial court and remand the case for a new trial on the plaintiff's unjust enrichment claim, we decline to address these issues in this opinion.

[8] The exhibit list initially did not reflect exhibit 7. On October 13, 2022, the plaintiff filed a motion for order seeking to amend the exhibit list to include exhibit 7. On October 18, 2022, the court issued an order stating in relevant part that the "[p]laintiff's trial exhibit 7 was admitted as a full exhibit with the redaction of the last three columns entitled—Task—CT DOL Labor Rate and value. The court marked this as a full exhibit with the redactions as mentioned at trial and [it] should be included in the list of full exhibits." An amended list of exhibits subsequently was filed reflecting exhibit 7's status as a full exhibit.

with prior construction projects that he had performed in Jamaica. As relevant to the present case, the plaintiff testified that he used Microsoft Project to record his hours and schedule his work at the property. Specifically, the plaintiff testified "it's basically my input, but it's recorded over a period of time. So, the . . . app is just storing what I'm putting into it. It's not telling me what it was. I'm putting in the information." Data from the software then was used to generate a table of tasks shown on exhibit 7. The plaintiff also testified as to each of the tasks listed on exhibit 7 and the hours he spent completing those tasks. A. W. and the trial court extensively questioned the plaintiff, both on cross-examination during the plaintiff's case-in-chief and on direct examination during the defendants' case, about Microsoft Project, his use of the software, and the manner in which he logged his hours.[9] A. W. also cross-examined the plaintiff as to the number of hours he

---

[9] The following colloquy occurred during the defendants' direct examination of the plaintiff as to the tasks reflected in exhibit 7:

"[A. W.]: How did you come up with the hours that you worked for the first row, make, and prep, and install the window—

"[The Plaintiff]: I've answered this already.

"The Court: You can answer it again, sir, if she asked you the question. How'd you come up with 120 hours?

"[The Plaintiff]: I had all the hours in the app that I used to track the progress of the project.

"The Court: You did it from an app.

"[The Plaintiff]: No. I entered the—I recorded the hours in the app that I used to track . . . the progress of the project.

"The Court: Have you any—did you write these hours down? Do you have a notebook or anything indicating the hours you spent on each of these tasks?

"[The Plaintiff]: The app pretty much—

"The Court: No, no.

"[The Plaintiff]: Not on notebook.

"The Court: Just answer my question.

"[The Plaintiff]: No. Not on notebook, no.

"The Court: No, okay. And is this an estimate as to the amount of hours you spent?

"[The Plaintiff]: It would be more actual.

"The Court: Excuse me.

"[The Plaintiff]: It would be actual.

"The Court: These are the actual hours that you spent.

"[The Plaintiff]: Right, right.

spent on the tasks reflected in exhibit 7. In their posttrial briefing, aside from A. W. arguing that the plaintiff's labor bill was "exorbitant" and that it included "a few overlapping hours and overlapping dates," the defendants did not otherwise contest exhibit 7.

In its memorandum of decision, the trial court stated: "The plaintiff next seeks to recover monies for the labor

---

"The Court: And, in some way, you've recorded the actual hours.

"[The Plaintiff]: Right, right.

"The Court: We just don't have . . . the document or . . . the notebook where you kept the actual hours.

"[The Plaintiff]: Yeah, the tablet.

"The Court: The what?

"[The Plaintiff]: TabIet.

"The Court: Okay. He answers the question. He [said], these are the actual hours.

"[A. W.]: Okay.

"[A. W.]: Will you be—if we ask you to provide the—show us how it's been logged on—can you show how it's been logged on the tablet?

"[The Plaintiff]: You have the data here.

"[A. W.]: Pardon me?

"[The Plaintiff]: You have the data right here.

"[A. W.]: No, no, no, no. Can you provide us how you logged the hours on there, meaning is it going by day or by week? How were they logged?

"[The Plaintiff]: I start the project. I put in the time. And then, each day that I go, I mark the progress when I stop. Next day, I go—I continue, I enter that, and I keep going on.

"[A. W.]: But that's what I'm asking now. Can you provide that evidence to us?

"[The Plaintiff]: What do you mean, the procedure.

"[A. W.]: Of how it's been logged, yeah, because you said you start and you stop; so we need to see the evidence?

"[The Plaintiff]: You need to see the evidence of the procedure of doing it. So, basically . . .

"The Court: Wait a minute. I think she's asking, can you provide us with the document that you recorded these hours while you were doing the work?

"[The Plaintiff's Counsel]: Your Honor, I'm . . . gonna object. There's no testimony that it was on a document. [The plaintiff] has testified that it was recorded each day on an app, an application on a digital or an electronic tablet. Is that the program that he's talking about that he did that?

"[The Plaintiff]: Yes.

"The Court: It—it's a program. It's a computer program.

"[A. W.]: Okay. . . . So, it's a computer program. But doesn't he have a backup that shows you the hours—

"[The Plaintiff]: The device . . . broke while I was working one day on the house.

he personally expended renovating the property. The plaintiff claims that he devoted 2486 hours to working on the property, as evinced by exhibit 7. At trial, the plaintiff testified at one point that the total number of hours worked was computed with the assistance of a computer program. When the court pressed him on the involvement of the computer program, the plaintiff said that he remembered all of the hours he worked on the project although he never made any simultaneous notes or memorandum as to the hours worked, and relied on his memory as to the number of hours he worked on the project. There was no testimony at trial as to any computer program that was used to compute the hours worked as stated. The plaintiff testified that the number of hours worked, as shown in exhibit 7, was from his recollection. In the plaintiff's [posttrial] brief, dated October 13, 2022, the plaintiff's attorney states that 'corresponding to the expenses he incurred for the material incorporated into the repair and improvement of the property, the plaintiff performed extensive labor in the repair and improvement of the property. . . . By the use of the computer application Microsoft Project, the plaintiff tracked the time he spent repairing and improving the property. The time is reflected in the plaintiff's trial exhibit 7.' As stated, there was never any evidence presented at trial that the time computed in exhibit 7 was from a Microsoft program. The plaintiff has admitted, through his attorney, that the hours generated in exhibit 7 were the product of a computer program, which certainly is contrary to his testimony in court. The court cannot consider the plaintiff's claim that the hours generated in exhibit 7 was the product of a computer program because the plaintiff has failed to provide any evidence of the program's trustworthiness and reliability. . . . Accordingly, the court rejects

"[A. W.]: And you never have—did you have a backup?
"[The Plaintiff]: No."

the plaintiff's claim that he worked 2486 hours renovating the property." (Citation omitted.)

The court then stated that it accepted E. W.'s valuation of the plaintiff's work at the property, which amounted to $1768. In accepting E. W.'s valuation, the court stated that E. W. "is a skilled craftsman with experience and expertise in the construction industry. Before immigrating to this country, [E. W.] was active in all fields of construction in Jamaica, where he specialized in carpentry and joinery, as well as performing plumbing and electrical work. When [E. W.] arrived in the United States, he continued to work in the construction industry. Additionally, he obtained an electrical certificate from Southern Westchester BOCES Adult Education in June, 2006 . . . . Accordingly, [E. W.] is eminently qualified to assess the value of the plaintiff's work . . . ." The court then awarded the plaintiff $1768 for his work at the property, along with $11,999.63 for the materials he purchased and used to renovate the property.[10]

In its memorandum of decision, the court relied on *Federal Deposit Ins. Corp.* v. *Carabetta*, 55 Conn. App. 369, 377, 739 A.2d 301, cert. denied, 251 Conn. 927, 742 A.2d 280 (1999), to conclude that the plaintiff had failed to establish that the software program used to create exhibit 7 was trustworthy and reliable. *Carabetta* relies on the seminal case of *American Oil Co.* v. *Valenti*, 179 Conn. 305, 359, 426 A.2d 305 (1979). In *American Oil Co.*, our Supreme Court "first addressed the standard to be used in admitting computer generated evidence [adopting] a general rule, requiring testimony by a person with some degree of computer expertise, who has sufficient knowledge to be examined and cross-examined about the functioning of the computer. In that

---

[10] We note that the court, in calculating the total award to the plaintiff, misstated its labor award as $1700. Thus, the total award reflected in the memorandum of decision was $68 less than it should have been.

case, the court cautioned, [c]omputer machinery may make errors because of malfunctioning of the hardware, the computer's mechanical apparatus. Computers may also, and more frequently, make errors that arise out of defects in the software, the input procedures, the data base, and the processing program. . . . In view of the complex nature of the operation of computers and general lay unfamiliarity with their operation, courts have been cautioned to take special care to be certain that the foundation is sufficient to warrant a finding of trustworthiness and that the opposing party has full opportunity to inquire into the process by which information is fed into the computer." (Internal quotation marks omitted.) *State* v. *Swinton*, 268 Conn. 781, 806–807, 847 A.2d 921 (2004).

We begin by setting forth the relevant legal principles governing our review of the plaintiff's claim. In the present case, the trial court made factual findings predicated on its understanding and rejection of exhibit 7. "[W]here the factual basis of the [trial] court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Under the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the evidence before the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . .

Instead, we make every reasonable presumption . . . in favor of the trial court's ruling. . . .

"[W]here . . . some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's [fact-finding] process, a new hearing is required." (Citations omitted; internal quotation marks omitted.) *Circulent, Inc.* v. *Hatch & Bailey Co.*, 217 Conn. App. 622, 629–30, 289 A.3d 609 (2023).

We thoroughly have reviewed the record and conclude that the trial court's decision as to the plaintiff's unjust enrichment claim rests on clearly erroneous factual findings as to how exhibit 7 was created. Specifically, the court mistakenly found that the plaintiff did not make "simultaneous notes or memorandum of the hours worked," "[t]here was no testimony at trial as to any computer program that was used to compute the hours worked as stated," and "the hours generated in exhibit 7 were the product of a computer program . . . ." Our review of the record reveals that these findings are not supported by the evidence. First, the plaintiff testified that his hours were recorded contemporaneously, specifically, that "I start the project. I put in the time. And then, each day that I go, I mark the progress when I stop. Next day, I go—I continue, I enter that, and I keep going on." Second, the plaintiff testified at length regarding his use of Microsoft Project, that he input his hours into the software, and that the software "recorded [his hours] over a period of time." The defendants offered no evidence to the contrary on either of these points. Thus, the uncontroverted evidence was that the hours were contemporaneously recorded by the plaintiff in Microsoft Project, not that they were based on the plaintiff's "memory as to the number of

hours he worked on the project" or were a "product" of computations created by the Microsoft Project software.

Having concluded that the court's judgment as to the plaintiff's unjust enrichment count relied on the court's clearly erroneous factual findings regarding exhibit 7, we "are compelled to conclude that the court's error was harmful, requiring a new trial." *Circulent, Inc.* v. *Hatch & Bailey Co.*, supra, 217 Conn. App. 632; see also, e.g., *Downing* v. *Dragone*, 184 Conn. App. 565, 574–75, 195 A.3d 699 (2018) (trial court's reasoning substantially relied on clearly erroneous factual finding, requiring new trial). As the trial court stated in its memorandum of decision, "[a]t issue in the present case is the value of the services and materials rendered by the plaintiff that the defendants either knew about or impliedly accepted." The court credited the plaintiff's evidence of the expenditures for the materials purchased, finding that "the cost of the materials used and paid for by the plaintiff, as shown in exhibits 3 and 4, were provided by the plaintiff to rehabilitate the property in the amount of $11,999.63. The court further finds that the defendants were aware of and benefitted from the materials provided, and therefore the plaintiff should be reimbursed based on the theory of unjust enrichment." Turning to the value of the plaintiff's labor, the court rejected his claim that he worked 2486 hours renovating the property largely because of its misunderstanding as to the plaintiff's use of Microsoft Project, in favor of accepting E. W.'s valuation of the plaintiff's services in the amount of $1768. Accordingly, we conclude that the court's clearly erroneous factual findings as to exhibit 7 constitute harmful error, and the plaintiff is entitled to a new trial on his unjust enrichment and quantum meruit claims.[11]

[11] Unjust enrichment and quantum meruit are related causes of action. "Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract. . . . Plaintiffs seeking recovery for unjust

The judgment is reversed only with respect to the unjust enrichment and quantum meruit counts of the plaintiff's complaint and the case is remanded for a new trial on those counts; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

———————————

enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. . . . Quantum meruit is a theory of contract recovery that does not depend upon the existence of a contract, either express or implied in fact. . . . Rather, quantum meruit arises out of the need to avoid unjust enrichment to a party, even in the absence of an actual agreement. . . . Centered on the prevention of injustice, quantum meruit strikes the appropriate balance by evaluating the equities and guaranteeing that the party who has rendered services receives a reasonable sum for those services." (Citations omitted; internal quotation marks omitted.) *Pollansky* v. *Pollansky*, 162 Conn. App. 635, 657–58, 133 A.3d 167 (2016).

In a footnote in his principal appellate brief, the plaintiff contends that "[t]he trial court concluded that there was no contract to sell the property but did not make any factual finding as to any agreement to repair and improve the property. It appears the damages to be awarded would be for quantum meruit, 'the value of the services rendered.' [*Shapero* v. *Mercede*, 262 Conn. 1, 7, 808 A.2d 666 (2002)]."

In its memorandum of decision, the court stated that "[t]he fourth count of the complaint sounds in quantum meruit, as the plaintiff seeks to recover the value of the services rendered. The court has awarded damages under the claim of unjust enrichment and therefore will not consider this count having awarded damages on the basis of unjust enrichment." Because the court's ruling on the quantum meruit count was dependent on its adjudication of the unjust enrichment count, our reversal of the judgment as to the unjust enrichment count also requires reversal of the judgment of the court as to the quantum meruit count.